### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|                          |     |                          |
|--------------------------|-----|--------------------------|
|                          | )   | Chapter 7                |
| IN RE:                   | )   |                          |
|                          | )   | Case No. 05-14082 (MFW)  |
| SYLVIA BROOKS,           | )   |                          |
|                          | )   |                          |
|           Debtor.        | )   |                          |
|                          | )   |                          |

### MEMORANDUM OPINION[1]

Before the Court is the Motion of the United States Trustee (the "UST") to dismiss the chapter 7 petition filed by Sylvia Brooks (the "Debtor") for substantial abuse under section 707(b) of the Bankruptcy Code.[2]  The Motion is opposed by the Debtor. For the reasons stated below, the Court will deny the Motion.

I.   BACKGROUND

On October 14, 2005, the Debtor filed a voluntary petition under chapter 7.  On November 4, 2005, the Debtor filed her Schedules and Statement of Financial Affairs.  The Schedules reveal unsecured debt of $75,586.08 and no net monthly income after expenses.

---

[1]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

[2]  Section 707 of the Bankruptcy Code has been significantly amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  The Debtor's case was filed before the effective date of the amendments and is, therefore, governed by the prior version.

On May 18, 2006, the UST filed its Motion to dismiss, asserting that the Debtor has sufficient net income to pay a significant percentage of her unsecured debt.  On June 8, 2006, the Debtor responded and asserted that she does not have the ability to repay her creditors because of significant health issues faced by her, her husband, and her son.

A hearing on the UST's Motion to dismiss was held on July 26, 2006.  The parties filed post-hearing briefs outlining their respective legal arguments, at which time the Debtor advised that she had a new job resulting in lower income.  As a result, a further hearing was held on September 20, 2006, to allow the Debtor to present evidence regarding her changed income and expenses.  Thereafter, on October 10, 2006, the Debtor filed a summary of her amended Schedules of income and expenses, and the UST filed a revised income and expense analysis.  Briefing is now complete, and the matter is ripe for decision.

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A) & (O).

III. <u>DISCUSSION</u>

    A.   <u>Standard for Dismissal</u>

    Prior to the recent amendments, section 707(b) provided:

> [T]he court, on its own motion or on a motion by the
> United States Trustee . . . may dismiss a case filed by
> an individual debtor under this chapter whose debts are
> primarily consumer debts if it finds that the granting
> of relief would be a substantial abuse of the
> provisions of this chapter.  There shall be a
> presumption in favor of granting the relief requested
> by the debtor.

11 U.S.C. § 707(b) (1984) (amended 2005).[3]  The parties agree that the instant case involves an individual debtor who has primarily consumer debts.  The issue at bar is whether the filing is a substantial abuse of chapter 7.

    Courts interpreting former section 707(b) have held that the debtor's ability to repay creditors under a hypothetical chapter 13 plan is the primary test of whether there is substantial abuse.  <u>See, e.g.</u>, <u>Kornfield v. Schwartz (In re Kornfield)</u>, 164 F.3d 778, 780, 784-85 (2d Cir. 1999) (affirming dismissal under totality of the circumstances analysis where debtor had income of at least $276,000 and unsecured debt over $580,000); <u>First U.S.A. v. Lamanna (In re Lamanna)</u>, 153 F.3d 1, 4-5 (1st Cir. 1998) (adopting "totality of the circumstances" test and affirming dismissal where debtor could repay 100% of his unsecured debts

---

    [3]  Among other changes, the current version eliminates the presumption in favor of the debtor and lowers the standard for dismissal from substantial abuse to abuse.  11 U.S.C. § 707(b)(1).

within three to five years); <u>Green v. Staples (In re Green)</u>, 934 F.2d 568, 572-73 (4th Cir. 1991) (adopting "totality of the circumstances" test and indicating that the primary factor is ability to repay creditors); <u>In re Walton</u>, 866 F.2d 981, 985 (8th Cir. 1989) (affirming dismissal of debtor's case where debtor could repay two-thirds of unsecured debt within three years and 100% within five years); <u>Zolg v. Kelly (In re Kelly)</u>, 841 F.2d 908, 914-15 (9th Cir. 1988) (stating that the primary question in determining substantial abuse is whether the debtor can repay his debts under a chapter 13 plan).

Although the Third Circuit has not yet established the standard to be applied to substantial abuse claims, several courts in this circuit have reviewed the issue and determined that a debtor's ability to repay should be the principal factor considered.  <u>See, e.g.</u>, <u>In re Roth</u>, 108 B.R. 78, 80-81 (Bankr. W.D. Pa. 1989) (finding substantial abuse where debtor could repay 43% of unsecured debts under a three-year plan); <u>In re Burnley</u>, No. 98-18312DWS, 1999 Bankr. LEXIS 1164, at *15-17 (Bankr. E.D. Pa. Aug. 27, 1999) (noting that many courts look to debtor's ability to repay when deciding whether substantial abuse exists and concluding that the court required knowledge of the debtor's income and expenses to make that determination).

Based on the case law, this Court adopts the totality of the circumstances test and considers the Debtor's ability to repay

4

her creditors a key factor.

      B.   Substantial Abuse

The UST contends that granting the Debtor a chapter 7 discharge would be a substantial abuse of the bankruptcy process. The UST asserts that despite her reduced income in her new job, the Debtor still has disposable income of more than $1,600 per month, which gives her the ability to repay 100% of her creditors over a five-year period under a hypothetical chapter 13 plan.

After filing amended Schedules reflecting her reduced income and recalculated expenses, the Debtor contends that she has only $180.46 per month in disposable income.  The Debtor argues that if she made payments to her creditors with her disposable income under a three-year plan, less than 7% of the debt owed to creditors would be paid after deducting trustee and attorneys' fees.  For the reasons set forth below, the Court agrees with the Debtor's income and expense calculations, with the exception of minor modifications to the Debtor's transportation expense.

      1.   Income

While testifying at the July 26, 2006, hearing on the UST's Motion to dismiss, the UST analyst stated that the Debtor's income was under-reported because she did not include income from several part-time jobs she had held in the past year.  The UST included the amount earned from these part-time jobs when calculating the Debtor's yearly income.

Since the initial hearing on the UST's motion to dismiss, however, the Debtor has filed revised Schedules of income and expenses to reflect her changed employment circumstances. In her amended income schedule, the Debtor included the average monthly amount she earns from part-time employment. As of October 2006, the Debtor has earned a total of $892.50 from her work on book reviews and tutoring sessions this year. Based on this amount, she included $89.00 on her income schedule as other monthly income.

In contrast, the UST includes $378.84 as other monthly income on its suggested revisions to the Debtor's income schedule. This figure represents the average monthly amount which the Debtor earned from consulting services pre-petition. Post-petition, however, the Debtor has earned substantially less from part-time employment than she had prior to filing for chapter 7 relief.

Because the language of former section 707(b) is very broad and intended to give the Court substantial leeway to consider all aspects of a debtor's financial condition, the Court may consider this decrease in income from part-time employment when deciding the UST's Motion to dismiss. See, e.g., In re Cortez, 457 F.3d 448, 458-59 (5th Cir. 2006) (concluding that a court may consider post-petition events, including changes in financial circumstances, when determining substantial abuse under section

6

707(b)).  Therefore, the Court will consider only the income that the Debtor is actually earning at this time.

The UST also asserts that the Debtor and her husband will be eligible either now or in the near future to withdraw funds from their respective retirement accounts without incurring a penalty. This is incorrect.  The Debtor is currently only 56 and, therefore, not eligible to make a withdrawal from her retirement fund without incurring a penalty for more than three years.  See 26 U.S.C. § 72(t) (providing for 10% penalty on withdrawal of money from a qualified retirement fund before the recipient reaches the age of 59 1/2).  Further, although the Debtor may make withdrawals from her account when she reaches age 59 1/2, she will not be required to do so for more than years after that. 26 U.S.C. §§ 401(a)(9)C) & 403(b)(10) (requiring withdrawals from retirement funds to start no later than when the recipient reaches the age of 70 1/2).

Even if the Debtor were eligible to make withdrawals from her account, however, the withdrawn funds, as well as the assets in that retirement account, are not property of the estate.  See Rousey v. Jacoway, 544 U.S. 320, 322, 334-35 (2005) (finding that funds withdrawn from Individual Retirement Accounts are exempt from inclusion in property of the estate under section 522(d)(10)(E)).  See also 11 U.S.C. § 522(b)(3)(C) (2005) (provision added by BAPCPA to clarify that the debtor may exempt

7

funds in a retirement plan to the extent the plan is exempt from taxation under, <u>inter alia</u>, section 403 of the Internal Revenue Code).

Consequently, the Court will not consider any amount which the Debtor may, but has not, withdrawn from her retirement account as current income for purposes of the substantial abuse test.

      2.  <u>Expenses</u>

The UST also contends that several of the Debtor's expenses are overstated.  Specifically, the UST asserts that the Debtor should not be entitled to a $359 deduction for her car because the car is not in her name.  The Debtor testified that the car is used by her exclusively to get to work; it is in her husband's name only because she could not get credit with which to buy it. The Court agrees with the Debtor that this is an acceptable expense for her.  <u>See</u> <u>In re Demonica</u>, 345 B.R. 895, 904-05 (Bankr. N.D. Ill. 2006) (finding that the debtor may claim a deduction for ownership of a car for which he made monthly payments but did not own).

In addition, the UST asserts that miscellaneous expenses claimed by the Debtor for clothing ($125), personal care ($100), and recreation ($150) are unreasonable and excessive.  Given the Debtor's profession as an Assistant Professor at Wilmington College, the nature of the expenses, and the monthly amounts

listed, the Court does not find that these expenses are unreasonable or excessive.

The UST also asserts that several other expenses should be reduced, including expenses incurred by the Debtor for home maintenance ($225), electricity and heating fuel ($175) and an emergency insurance fund ($50). With respect to electricity and heating fuel, the UST contends that the expense should be reduced because the Debtor failed to produce supporting documentation showing the monthly amount due for heat. The Court finds that this expense is not unreasonable given the recent increase in energy prices. The UST argues that the emergency insurance fund should be reduced by 50% because the Debtor has not deducted the amount properly reflecting her husband's contribution to that expense. Because these items represent reasonable and necessary personal expenses, however, the Court does not agree that such expenses should be reduced.

Finally, the UST asserts that the Debtor's expense schedule should exclude the amounts listed for medical and dental expenses ($200) as well as the monthly refrigerator payments ($100). The UST contends that the Debtor's medical expenses should be reduced to zero because the amount listed in Schedule J represents the amount she pays to cover her son's medical expenses. The Debtor testified, however, that she has had three hip surgeries over the past three years and will likely require a fourth operation this

9

year.  She currently has pins in her hip and is in constant pain.
In light of this medical condition, her routine visits to the
doctor, and her prescription medication, the Court finds that the
Debtor's listed medical expenses are reasonable.  See In re
Woodman, 287 B.R. 589, 593 (Bankr. D. Me. 2003) (noting that
"reasonableness and necessity of expenses is a factual matter, to
be determined 'in the context of individual debtors and their
dependents'.") (citing 2 Keith M. Lundin Chapter 13 Bankruptcy §
165.1, at 165-1 (3d ed. 2000)).

The UST contends that the refrigerator expense should not be
deducted from income when considering whether the Debtor has the
ability to repay a substantial portion of the debt owed to her
creditors over the life of a chapter 13 plan.  Its theory is that
the refrigerator expense will have been paid in full well before
the end of the plan.  Despite what her payments may be for the
refrigerator in the future, the Debtor's current monthly expense
obligations include this payment and the Court will consider this
evidence in its determination of whether the Debtor has
sufficient disposable income to repay her creditors under a
chapter 13 plan.  See, e.g., In re Pennington, 348 B.R. 647, 651
(Bankr. D. Del. 2006) (holding that, in considering whether case
was an abuse under section 707(b)(3), court must consider
debtor's current car payment rather than higher car payment he
had at commencement of the case).

The UST also asserts that the Debtor's transportation expense ($250) should be significantly reduced to account for the fact that the Debtor's new commute is 15% of the distance to her former employer.  At the evidentiary hearing on September 20, 2006, the Debtor admitted that her new employment is located closer to her home and will require less mileage on a daily basis.  The Debtor testified, however, that her overall transportation costs will not decrease because she will continue to make certain longer trips for her employment, thus justifying the monthly mileage expense.

While the Debtor continues to travel for her new job, as she did when working for her former employer, these expenses are reimbursed by her new employer.  Given these circumstances, the Court agrees with the UST that the Debtor's transportation expense should be reduced from $250 to $100 to reflect the significant change in the Debtor's daily commute.

Nonetheless, the Court concludes that the Debtor does not have the ability to pay creditors a substantial dividend under a chapter 13 plan.  After decreasing expenses to reflect her shorter commute, the Debtor's net monthly income is $3,515.46 while her expenses are $3,184.00, leaving disposable income of $331.46 per month.  After considering added attorney's and trustee's fees, the Debtor's unsecured creditors would receive approximately 14% of their debt in a three-year plan and 24% in a

11

five-year plan.  In the BAPCPA amendments, Congress determined that the ability to repay unsecured creditors 25% was presumed abuse.  <u>See</u> Honorable Eugene R. Wedoff, <u>Judicial Discretion to Find Abuse Under Section 707(b)(3)</u>, Am. Bankr. Inst. J., Apr. 2006, at 52.  Substantial abuse is a higher standard, and therefore the threshold cannot be less.  The Court consequently concludes that there is not substantial abuse in this case.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that the Debtor does not have the ability to repay her creditors a significant distribution and, therefore, granting relief under chapter 7 would not be a substantial abuse.  The Court will, accordingly, deny the UST's Motion to dismiss.

An appropriate order is attached.

BY THE COURT:

Dated: December 6, 2006          Mary F. Walrath
                                 United States Bankruptcy Judge

12